**Fill in this information to identify the case:**

Debtor 1    Nick Anthony Endrikat

Debtor 2    _____
(Spouse, if filing)

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA
                                                                                            (State)

Case number    9:25-bk-11649-RC

# Official Form 410S1
## Notice of Mortgage Payment Change                                      12/25

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.**

**Name of creditor:** FourLeaf Federal Credit Union

**Last 4 digits of any number you use to identify the debtor's account:**    1425

**Court claim no. (if known):** N/A

**Date of payment change:**
Must be at least 21 days after date of this notice    1/28/2026

**New total payment:**
**Principal, interest, and escrow, if any**    $755.95

### Part 1: Escrow Account Payment Adjustment

**1. Will there be a change in the debtor's escrow account payment?**

☒ No.

☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

Current escrow payment: $ _____      New escrow payment: $ _____

### Part 2: Mortgage Payment Adjustment

**2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

☒ No.

☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

Current Interest rate: _____ %      New Interest rate: _____ %

Current principal and interest payment: $ _____      New principal and interest payment: $ _____

### Part 3: Annual HELOC Notice

**3. Will there be a change in the debtor's home-equity line-of-credit (HELOC) payment for the year going forward?**

☒ No.

☐ Yes.

     **Current HELOC Payment:**      $ _____

     **Reconciliation amount:**      + $ _____    or
                                             - $ _____

| Debtor 1 | Nick Anthony Endrikat | Case number (if known) 9:25-bk-11649-RC |
|---|---|---|
| | First Name  Middle Name  Last Name | |

**Amount of next payment (including reconciliation amount)**       $ _____

**Amount of the new payment thereafter (without reconciliation amount)**   $ _____

## Part 4: Other Payment Change

**4. Will there be a change in the debtor's mortgage payment for a reason not listed above?**

☐ No.

☒ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect.)*

Reason for change: **Consistent with the terms and conditions of the home equity line of credit variable rate note**

Current mortgage payment: $ 755.28          New mortgage payment: $ 755.95

## Part 5: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☐ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✗ /s/ Kristin A. Schuler-Hintz                Date  12/31/2025
  Attorney For Creditor

**Print:** Kristin A. Schuler-Hintz, Esq.          Title  Attorney for Creditor
  First Name  Middle Name  Last Name

Company  McCarthy & Holthus, LLP

Address  2763 Camino Del Rio South, Suite 100
  Number    Street
  San Diego, CA 92108
  City State ZIP Code

Contact phone  877-369-6122          Email  bknotice@mccarthyholthus.com

Loan No: ███

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND DISCLOSURE STATEMENT
(Interest Only)

| | | |
|---|---|---|
| **September 8, 2023** | **LOMPOC** | **California** |
| [Date] | [Title City] | [Title State] |

**232 ALDEBARAN AVENUE, LOMPOC, CA 93436**
[Property Address]

**Credit Limit: $78,000.00**
**Initial Variable Rate Advance: $0.00**
**Margin: 2.000%**
**Initial ANNUAL PERCENTAGE RATE: 10.500%**

**Draw Period: 10 years**
**Repayment Period: up to 20 years**
**Minimum Balance: $0.00**

**FIXED RATE LOAN DETAIL:**
**Initial Fixed Rate Loan Advance: $78,000.00**
**TERM: 240 months**
**RATE: 9.880%**
**ESTIMATED PAYMENT: $746.53**

**FINANCE CHARGES (due at closing)**
NONE

**Other Closing Costs (due at closing)**
NONE

**Maintenance Fees (due when incurred)**
NONE

**Initial Rate Not Discounted.** The Daily Periodic Rate is **.0288%, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above.** The **ANNUAL PERCENTAGE RATE** may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below).

1. **DEFINITIONS:**
    (A) **"Agreement"** means this document.
    (B) **"You"** or **"Your"** is NICK ENDRIKAT. Your address is **232 ALDEBARAN AVENUE, LOMPOC, CA 93436**.
    (C) **"Lender"** is **BETHPAGE FEDERAL CREDIT UNION**. Lender's address is **899 SOUTH OYSTER BAY ROAD, BETHPAGE, NY 11714**. If Lender is licensed under the California Finance Lenders Law, Lender's license number is _____.
    (D) **"Holder"** is Lender or any person or entity who takes this Agreement by transfer and is entitled to receive payments under this Agreement.
    (E) **"Account"** means your home equity line of credit account with Holder.
    (F) **"Loan"** or **"Loans"** means any money advanced to you by Holder when you access the Account.

Initials: _NE_

Loan No: ▮▮▮▮▮▮▮

(G) **"Credit Limit"** means the maximum aggregate amount of principal of the Loans that Holder will allow you to owe under this Agreement, unless otherwise agreed. **The Credit Limit is indicated on page 1 above.**

(H) **"Account Balance"** means the total of the unpaid principal of the Loans, plus earned but unpaid **FINANCE CHARGES** and fees. Your Account Balance will include **FINANCE CHARGES** calculated using a variable rate unless you choose a Fixed Rate Loan Option.

(I) **"Minimum Balance"** means the minimum amount of principal of all Loans that you must maintain under the Account. **If applicable, the Minimum Balance will be indicated on page 1 above.**

(J) **"Initial Variable Rate Advance"** means the amount of the Loan that you must accept to open the Account. **The Initial Variable Rate Advance is indicated on page 1 above.**

(K) **"Initial Fixed Rate Loan Advance"** means the initial Fixed Rate Loan amount, if you chose a Fixed Rate Loan Option when you opened the Account. **The Initial Fixed Rate Loan Advance will be indicated on page 1 above.**

(L) **"Minimum Variable Rate Loan Advance"** means the minimum amount of a variable rate Loan that you must request. **The Minimum Variable Rate Advance for a variable rate Loan is $0.00.**

(M) The **"Minimum Fixed Rate Loan Advance"** means the minimum amount of a Fixed Rate Loan that you must request. **The Minimum Fixed Rate Loan Advance for a Fixed Rate Loan is $10,000.**

(N) **"Draw Period"** means the period of time during which you may request Loans and must make payments on your Account Balance. **The Draw Period is indicated on page 1 above.**

(O) **"Repayment Period"** means the period of time beginning at the end of the Draw Period during which you no longer may request Loans and must repay the Account Balance. **The Repayment Period is indicated on page 1 above.** For a Fixed Rate Loan (see definition below) you must begin repaying the Account Balance no later than the payment date on your Billing Statement. You may choose a Repayment Period of 5, 10 or 20 years, but not exceeding the term of this Agreement.

(P) **"Billing Statement"** means a statement furnished by Holder each Billing Cycle (as defined in subsection (Q) below) that may show, among other things, Loans, **FINANCE CHARGES**, other charges, payments made, other credits, the previous Account Balance, the current Account Balance, and the required payment for the Account during the Billing Cycle.

(Q) **"Billing Cycle"** means the regular period or interval between the days or dates of the Billing Statements during which **FINANCE CHARGES** accrue and that will be used to determine the amount of your payment and when your payment is due. The Billing Cycle is **monthly**.

(R) **"Index"** means the U.S. Prime Rate as published in the Wall Street Journal on the 25th day of each month (or the next day of publication if not published on that date). To determine the **ANNUAL PERCENTAGE RATE** that will apply, we add or subtract a margin to the value of the index.

(S) **"Fixed Rate Loan Option" or "FRLO"** means a fixed rate, fixed payment Loan ("Fixed Rate Loan") that you can request either at account opening or during the Draw Period to convert some or all of your variable rate credit line account balance into a Fixed Rate Loan under the same account. Payments are due monthly. If you choose to convert any portion of your balance to a Fixed Rate Loan, the **ANNUAL PERCENTAGE RATE** will be the U.S. Prime Rate, as published in the Wall Street Journal that is in effect at the date of conversion, plus a margin. The margin applied will be based on your credit history and Combined Loan-to-Value (CLTV) ratio at the time of application and the term selected for the Fixed Rate Loan. Your **ANNUAL PERCENTAGE RATE** will be fixed at the rate in effect on the date you choose the Fixed Rate Loan Option. You cannot have more than three (3) active Fixed Rate Loans at any time. The minimum amount of each Fixed Rate Loan is indicated in Section (M) above. An Introductory Rate cannot be applied toward a Fixed Rate Loan.

Initials: _NE_

Loan No: ▮▮▮▮▮▮

## 2. OPENING YOUR LOAN

The Loan will be opened when you have signed and delivered in acceptable form all documents considered necessary by Holder and Holder makes the Initial Variable Rate Advance or Fixed Rate Loan Advance to you. Each of you who signs this Agreement is jointly and individually obligated to keep all of the promises made in this Agreement, and, as such, Holder may require any of you to pay all amounts due under this Agreement. Each of you agrees not to give Holder conflicting instructions under this Agreement.

## 3. ACCESSING YOUR LOAN

You may access the Loan after any right you have to cancel this Agreement expires and all of Holder's conditions have been met. You may access the Loan initially only for an amount equal to the Initial Advance. Thereafter, you may access the Loan only for an amount equal to or greater than the Minimum Advance that applies (as applicable and as described in Section 1 above). The use of a check in and of itself does not create a Fixed Rate Loan. You must contact Holder to do so. Holder at Holder's option may without obligation make a Loan in an amount that is less than the Minimum Advance; by doing so, however, Holder does not waive the right to later refuse to make such a Loan.

You may access the Account: (a) by telephone; (b) in person; (c) by letter; (d) by writing a check using one of the checks that Holder furnishes to you ("Checks"); (e) through Home Banking (if you are enrolled in that service); or (f) by any other method acceptable to Holder. Each of you who signs this Agreement may access the Account jointly or individually, and Holder may rely on instructions from any one of you with regard to this Agreement. You may be required to prove your identity. If you request a Loan by telephone, Holder will either make a deposit to your Bethpage Savings Account, Bethpage Checking Account, Bethpage Money Market Account or mail you a regular check, whichever you specify. Such Loan will appear on a subsequent Billing Statement which will be conclusive evidence of your request and your obligation to repay it.

You may not use any Loan provided by Holder to make payments on the Account. In addition, Holder reserves the right not to honor a Check under the following circumstances: (a) the Check is post-dated (if a post-dated Check is paid and as a result any other Check is returned, Holder will not be responsible); (b) a Check or Checks have been reported lost or stolen; (c) the Check is not signed by one of you; (d) the Account has been terminated or suspended as provided in this Agreement or may be so terminated or suspended if Holder pays the Check; (e) the Check is less than the Minimum Variable Rate Advance or Fixed Rate Loan Advance; or (f) you are in violation of any transaction requirement or would be if Holder honored the Check. Dishonor of a Check by Holder for any reason provided in this Agreement will not constitute wrongful dishonor. Holder's liability otherwise for wrongful dishonor, if any, of a Check is limited to your actual damages.

## 4. AVAILABILITY OF LOANS

You may access the Account and receive a Loan during the Draw Period, subject to the provisions of this Agreement and Applicable Law. Holder at Holder's option may extend the Draw Period. During the Draw Period, you may borrow against the Account, repay any portion of the Account Balance, and re-borrow such portions up to the Credit Limit.

You may not access the Account so as to cause the Account Balance to exceed the Credit Limit. However, Holder at Holder's option may make a Loan that causes the Account Balance to exceed the Credit Limit; by doing so, however, Holder does not waive the right to later refuse to make such a Loan. If Holder agrees to make a Loan that causes the Account Balance to exceed the Credit Limit, you agree to execute additional security documents.

## 5. FINANCE CHARGES

In addition to the amount of any Loans made to you, you agree to pay Holder a **FINANCE CHARGE** (**"FINANCE CHARGE"** or **"FINANCE CHARGES"**) on the Account Balance. The Account Balance for each day is determined by taking the Account Balance at the beginning of that day and: (a) subtracting any unpaid

Initials: *NF*

Loan No: ███

FINANCE CHARGE and fees that are due; (b) subtracting the portion of any payments or credits received by Holder that day that apply to the repayment of the Loans; and (c) adding any Loans made that day and other charges.

The **FINANCE CHARGE** on a Loan begins to accrue immediately from the time Holder makes the Loan to you. There is no "free ride period" during which **FINANCE CHARGES** will not accrue.

The **FINANCE CHARGE** is determined for each day by applying a daily periodic rate ("Daily Periodic Rate") to the Account Balance for that day; the Daily Periodic Rate is 1/365th of the **ANNUAL PERCENTAGE RATE** applicable to that day. The total **FINANCE CHARGE** for each Billing Cycle is determined by adding together the **FINANCE CHARGE** for the actual number of days during the Billing Cycle.

The initial Daily Periodic Rate is **.0288%, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated on the first page of this Agreement.** Unless an Introductory Rate applies, the **ANNUAL PERCENTAGE RATE** is based on the value of the Index. During both the Draw Period and the Repayment Period, the Index is the U.S. Prime Rate as published in the Wall Street Journal on the 25th day of each month (or the next day of publication if not published on that date). To determine the **ANNUAL PERCENTAGE RATE** that will apply to your line, we add or subtract a Margin to the value of the Index. The Margin, if any, is indicated on page 1 of this Agreement. The Index may change daily; however, the Index in effect on the day the **ANNUAL PERCENTAGE RATE** is first adjusted and on the 25th day of each month thereafter will be used to determine the new **ANNUAL PERCENTAGE RATE**. Any change in the **ANNUAL PERCENTAGE RATE** will take effect on the first day of the Billing Cycle and will not increase more than once per Billing Cycle.

The **ANNUAL PERCENTAGE RATE** will increase or decrease if the Index increases or decreases; the corresponding increase or decrease in the Daily Periodic Rate will be determined as described above. An increase or decrease in the **ANNUAL PERCENTAGE RATE** will result in a corresponding increase or decrease in the **FINANCE CHARGE** and may result in a corresponding increase or decrease in your monthly payment.

The **ANNUAL PERCENTAGE RATE** can change each month. In no event will the minimum **ANNUAL PERCENTAGE RATE** ("Floor") be less than **3.250%** (with the exception of an Introductory Rate if offered and subject to those terms), or the maximum **ANNUAL PERCENTAGE RATE** ("Cap" or "Maximum") will not increase above the lesser of **18.000%** or the highest allowable rate for this type of Agreement as determined by applicable state or federal law. Except for the Floor or Cap, there is no limit on the amount by which the rate can change during any one-month period.

For the **ANNUAL PERCENTAGE RATE** for a Fixed Rate Loan, see Section 1(S) above. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

☑ **Preferred Rate – Automatic Payments.** The initial Daily Periodic Rate is **.0288%** ("Initial Daily Periodic Rate"), **which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above.** The **ANNUAL PERCENTAGE RATE** may change and will be determined by adding the Margin described above to the Index. The Daily Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** reflects a **.250%** reduction, because you've elected to have your monthly payments automatically withdrawn from your Bethpage savings or checking account. A reduction of **.250%** is a reduction of the Initial Daily Periodic Rate of **.0007%**. If Holder is unable to withdraw the amount necessary to make any monthly payment on your Account, or if you cancel the automatic withdrawal of your payments, your **ANNUAL PERCENTAGE RATE** may immediately increase by **.250%** which will result in an increase in the Initial Daily Periodic Rate of **.0007%**.

☑ **Preferred Rate – Initial Draw of $25,000 or more.** The Daily Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** includes a **.250%** discount because you have taken an initial draw that equals or exceeds Twenty-Five Thousand Dollars ($25,000), and you agree to maintain a daily balance in your account(s) with Holder for at least $25,000 for twelve (12) consecutive months following the date of this Agreement. If for any reason your balance(s) decrease(s) below $25,000 during the twelve months, your **ANNUAL PERCENTAGE RATE** will immediately increase by **.250%**, which is the amount of the Daily Periodic Rate discount.

Initials: _NE_

Loan No: ▮▮▮▮

## 6. PAYMENTS

Your scheduled payment will be due monthly beginning **October 28, 2023**. You promise to pay to Holder any amounts owed under this Agreement as follows:

### (A) Draw Period

During the Draw Period, no later than the payment date specified in your Billing Statement, you must pay at least the Minimum Monthly Draw Period Payment. The "Minimum Monthly Draw Period Payment" will include (a) late charges and any other charges authorized by this Agreement, including without limitation, any expenses or advances incurred by Lender under the Security Instrument; (b) the accrued **FINANCE CHARGES** as of the last day of the Billing Cycle; and (c) any amounts past due on your Account. If, however, the unpaid balance in your Account is less than the Minimum Payment, your Minimum Payment will be equal to the balance in your Account. If you do not pay the Minimum Monthly Draw Period Payment, you cannot choose a Fixed Rate Loan Option. Minimum Monthly Draw Period Payments will not fully repay the principal of the Loans.

### (B) Repayment Period

During the Repayment Period, no later than the payment date specified in your Billing Statement you must pay at least the Minimum Monthly Repayment Period Payment. The "Minimum Monthly Repayment Period Payment" is equal to the amount of any accrued **FINANCE CHARGES** plus principal in an amount necessary to fully amortize the Account Balance by the Maturity Date defined below.

During the Repayment Period for a Fixed Rate Loan, no later than the payment date specified in your Billing Statement, you must begin repaying the Account Balance. Your Minimum Monthly Payment will be an amount sufficient to repay the Account Balance in substantially equal payments over the remaining term of the Fixed Rate Loan at the rate in effect at the time the Repayment Period that you choose begins.

The Minimum Monthly Repayment Period Payment will also include: (a) any amounts past due on your Account; (b) late charges and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by Lender under the Security Instrument; and (c) the amount of the Account Balance that exceeds the Credit Limit. If, however, the unpaid balance in your Account is less than the Minimum Monthly Repayment Period Payment, your Minimum Monthly Repayment Period Payment will be equal to the balance in your Account. Your Billing Statement will set forth the Minimum Monthly Payment Amount.

### (C) Final Payment

On the last day of the Repayment Period ("Maturity Date"), you must pay the entire Account Balance.

### (D) General Payment Terms

If the Loan Balance on any payment date is less than the required minimum payment, you must pay the entire Loan Balance. You must make all payments in U.S. dollars at the address shown on the Billing Statement. Your payment will be due on the date shown in your Billing Statement. The variable rate Loan Balance and fixed rate Loan Balance, if any, will be aggregated into a payment which may include separate late charges and other fees as applicable.

### (E) Prepayment

You may prepay all or any portion of the Loan Balance at any time without penalty; however, if your prepayment does not fully repay the entire Loan Balance, you must continue to make the required Minimum Monthly Payments.

## 7. FEES AND CHARGES

You agree to pay the following additional fees and charges to the extent not prohibited by Applicable Law:

### (A) Annual Charge

An annual charge of **$0.00**. Holder will add this amount to the Account Balance each year on the anniversary date of the Account.

Initials: _NB_

Loan No: ▮

### (B) Late Charge

A late charge on any monthly payment not paid within **10** calendar days from the date the payment is due. The amount of the charge will be **10.00% OF THE UNPAID AMOUNT OF ANY PAYMENT DUE. IF YOU CHOOSE A FIXED RATE LOAN, THE AMOUNT OF THE LATE CHARGE FOR EACH FIXED RATE LOAN SHALL BE 10.00% OF THE UNPAID AMOUNT OF THE PAYMENT DUE NOT TO EXCEED $12.50 PER FIXED RATE LOAN, AND NOT TO EXCEED $50.00 FOR THE ENTIRE ACCOUNT BALANCE FOR EACH BILLING CYCLE.** Holder may not charge this late charge to the extent prohibited by Applicable Law.

### (C) FINANCE CHARGES

The **FINANCE CHARGES** indicated on the first page of this Agreement.

### (D) Other Closing Costs

The Other Closing Costs indicated on the first page of this Agreement.

### (E) Payment of Holder's Costs and Expenses

If you are in default, all costs and expenses, including without limitation reasonable attorneys' fees, Holder incurs in enforcing this Agreement.

### (F) Satisfaction of Mortgage

Unless prohibited by Applicable Law, you (Borrower) will be responsible to pay any applicable county recording charges for the Satisfaction/Discharge of Mortgage.

**Refer to the Closing Cost Addendum regarding the impact of Closing Costs, including in the event your account is closed, terminated, or cancelled within thirty-six (36) months after closing.**

## 8. NOTICES

Unless Applicable Law requires a different method, any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder a notice of your different address. Any notice that must be given to Holder under this Agreement will be given by delivering it or by mailing it by first class mail to Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address.

## 9. SECURITY – INTEREST IN THE PROPERTY

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated the same date as this Agreement. The Security Instrument requires you to take certain actions to protect your home, which is located at the address shown on above ("Property"). You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument. Some of the conditions of the Security Instrument are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 9, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Indebtedness. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Indebtedness in full. If Borrower fails to pay the Secured Indebtedness in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: NE

Loan No: ▮▮▮▮▮

You also agree to obtain and maintain such insurance on the Property as Holder may require; you agree to maintain such insurance in the amounts and for the periods Holder requires. Unless prohibited by Applicable Law, the Account will be secured as well by proceeds of such insurance. You may obtain such insurance from the carrier of your choice, subject to Holder's right to disapprove your choice, which right will not be exercised unreasonably.

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense. Holder is under no obligation to purchase any particular type or amount of coverage; as such, you, your equity in the Property, or the contents of the Property may not be protected to the extent you desire. Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the **FINANCE CHARGE.**

### 10. CREDIT AND PROPERTY INFORMATION

You agree to furnish personal financial information and information about the Property and your occupancy of the Property reasonably requested by Holder from time to time. Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request. In addition, you authorize Holder, at Holder's expense, to make credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information. You also authorize Holder to release information regarding the status and history of the Account to third persons, including without limitation credit bureaus, merchants, and financial institutions, to the extent permitted by Applicable Law.

You will immediately deliver written notice to Holder of any adverse changes in your financial condition, any default under any Security Instrument on the Property or any change in your name, residence address or employment. You also will furnish to Holder promptly, upon request, financial statements and such other information with respect to your financial condition or the Property as Holder may from time to time require. Holder reserves the right to reappraise the Property, and you authorize Holder to order credit reports from time to time, at Holder's sole option and expense. You promise not to submit false or misleading information.

### 11. ASSIGNMENT

Holder may assign or transfer this Agreement and the Security Instrument without notice to you. You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization; however, this Agreement is binding upon your heirs, successors, and legal representatives.

### 12. TAX DEDUCTIBILITY

You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

### 13. DEFAULT

You will be in default under this Agreement if:

(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the Account, including without limitation your application for the Account and your occupancy of the Property;

(B) You do not meet the repayment terms under this Agreement;

(C) Your action or inaction adversely affects the collateral for the Account (including without limitation the Property) or Holder's rights in the collateral under the Security Instrument, including without limitation: (i) your failure to maintain insurance as required under the Security Instrument; (ii) your transfer of the Property as provided in the Security Instrument; (iii) your failure to maintain the Property or use of the Property in a destructive manner; (iv) your commission of waste of the Property; (v) your failure to pay taxes due on the Property or your failure to act such that a lien superior to Holder's lien is filed against the Property; (vi) the death of all of you; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property; (ix) the creation of a lien on the Property

Initials: NE

Loan No: ▮

without Holder's permission; or (X) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected.

### 14. REMEDIES FOR DEFAULT

If you are in default, Holder may terminate the Loan, require you to pay the entire outstanding Account Balance, and to return the Checks immediately to Holder, and charge a termination fee and any collection fees unless otherwise prohibited from doing so by Applicable Law. Holder at Holder's option also may take one or more lesser actions. Such lesser actions may include without limitation reducing the Credit Limit. Holder may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event Holder elects not to terminate the Loan or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again. Holder may also exercise its legal right to impress a statutory lien on all of your credit union account balances (except for any IRA account you may have). Holder may apply these account balances without notice to you, to repay the Account Balance.

### 15. CANCELLATION, SUSPENSION OR REDUCTION OF LOAN

Unless otherwise prohibited from doing so by Applicable Law, Holder may cancel, temporarily suspend or reduce the Loan if:

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Loan;

(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances;

(C) You are in default of a material obligation of this Agreement or the Security Instrument; for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement;

(D) A governmental action prevents Holder from imposing the **ANNUAL PERCENTAGE RATE** or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit;

(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe and unsound practice;

(F) The **ANNUAL PERCENTAGE RATE** reaches the maximum rate permitted under this Agreement;

(G) Any of you requests to do so; provided, that Holder may require that any such request be made in writing and sent to Holder by certified mail. For suspensions Holder may require that any requests to reinstate the Loan be in writing, signed by all of You and sent by certified mail. For cancellations, You must re-apply for a new Loan. If Holder believes there to be a dispute between You, Holder may, unless otherwise prohibited from doing so by Law, suspend or close the Loan, require a court order to act and/or require that all of You agree in writing to any transaction concerning the Loan; or

(H) The Minimum Monthly Draw Period Payment has not been paid within sixty (60) days past such payments due date.

If Holder suspends the Loan or reduces the Credit Limit, Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement. Any request by you to reinstate the Loan or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement.

### 16. CHANGING THE TERMS OF THIS AGREEMENT

Holder may not change the terms of this Agreement except under the following circumstances:

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available. Any new Index must have a historical movement similar to the original Index and together with a new

Initials: _NE_

Loan No: ▓▓▓▓▓▓

Margin must result in an **ANNUAL PERCENTAGE RATE** substantially similar to the **ANNUAL PERCENTAGE RATE** in effect at the time the original Index or replacement index became unavailable.

(B) Holder may make changes that you agree to in writing.
(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Loan.
(D) Holder may make changes to insignificant terms of this Agreement.

Unless otherwise prohibited from doing so by Applicable Law, Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum **ANNUAL PERCENTAGE RATE** is reached.

## 17. CANCELING THE LOAN

You may cancel the Loan at any time by notifying Holder in writing as provided in Section 8 above. Cancellation of the Loan by any of you will cancel the Loan for all of you. However, Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations.

Holder has paid all closing costs associated with this Agreement for your benefit. **You agree that you will not terminate this Agreement within thirty-six (36) months after closing. Termination of this Agreement includes, but is not limited to, refinancing of any superior lien mortgage on the Property securing this Agreement. If you terminate this Agreement within thirty-six (36) months after closing, you agree to reimburse the Holder for the closing costs paid on your behalf.**

If the Loan is canceled or terminated for any reason, you will not be entitled to a refund of or a credit for any initial, annual fees or other fees and charges payable under the Loan, unless otherwise required by Applicable Law. In addition, you must immediately return to Holder the Checks and any other devices you may have to access the Loan. Any further use of such devices may be considered fraudulent. Regardless of such cancellation or termination, you will remain obligated to repay the Account Balance in full, including any money advanced to you after the Loan has been canceled or terminated.

## 18. LOAN CHARGES

If this Agreement is subject to a law that sets maximum Loan charges, and that law is finally interpreted so that the **FINANCE CHARGE** or other Loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. Holder may choose to make this refund by reducing the principal owed under the Loan or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge. Your acceptance of any such refund made by direct payment to you will constitute a waiver of any right of action you might have arising out of such overcharge.

## 19. SEVERABILITY

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal, state, or local law, such provision or clause will be considered changed to the extent permissible and necessary to comply with such law. Otherwise, such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision.

## 20. YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act.

**Notify Holder In Case of Errors or Questions About Your Bill**

If you think the Billing Statement is wrong, or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement. Write to Holder as soon as possible.

Initials: _NF_

AABPLOCAGR
Asurity.com

Page 9 of 11
Data ID: WGTMJVB

**Loan No:** ▮

Holder must hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared. You can telephone Holder, but doing so will not preserve your rights.

In your letter, give Holder the following information:

(A) Your name and account number.

(B) The dollar amount of the suspected error.

(C) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Holder to pay the Loan automatically from your savings, checking, or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur.

**Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice**

Holder must acknowledge your letter within 30 days, unless Holder has corrected the error by then. Within 90 days, Holder must either correct the error or explain why Holder believes the Billing Statement was correct.

After Holder receives your letter, Holder cannot try to collect any amount you question or report you as delinquent. Holder can continue to bill you for the amount you question, including **FINANCE CHARGES**, and Holder can apply any unpaid amount against the Credit Limit. You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question.

If Holder finds that Holder made a mistake on the Billing Statement, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If Holder did not make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, Holder will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent. However, if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement. And Holder must tell you the name of anyone Holder reported you to. Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is.

If Holder does not follow these rules, Holder can't collect the first $50.00 of the questioned amount, even if the Billing Statement was correct.

Initials: _NE_

**Loan No:** ███

**24. STATEMENT OF OBLIGATION FEE**
   We may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

By signing below, you agree to the terms of this Agreement. You also acknowledge and agree that you received a completed copy of this Agreement.

**You understand that during the Draw Period, your minimum monthly payments will not reduce the unpaid principal of the Loans. After 10 years if you have only made minimum payments, your unpaid principal of the Loans will not be reduced. During the Repayment Period your Minimum Monthly Repayment Period Payments will increase even if your ANNUAL PERCENTAGE RATE stays the same because they will consist of accrued FINANCE CHARGES and any applicable premiums plus principal.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

_____(Seal)
NICK ENDRIKAT                                           -Borrower

[Sign Original Only]

Loan No: █████

# HOME EQUITY LINE OF CREDIT AGREEMENT
# ADVANCE MODIFICATION

By signing this form I/we agree to modify the above referenced Home Equity Line of Credit (HELOC) Agreement (the "Agreement") as follows:

1. Any person who is a party to the Agreement may individually authorize and take advances from this HELOC;
2. Any advances, whether taken individually or jointly, will be deemed an advance requested, authorized and taken by all persons who signed the Agreement;
3. Each borrower under the Agreement will be responsible, jointly and severally, for the repayment of all amounts owed pursuant to the Agreement;
4. Advances under the Agreement may be made in any manner authorized by Bethpage, including through Bethpage Home Banking and Bethpage Telephone Banking;
5. Requests for advances may be subject to the conditions and procedures established by Bethpage at the time the advance is requested;
6. Except as specifically modified by this Amendment, all other terms and conditions of the HELOC Agreement remain unchanged and in full force and effect.

(Note: All Borrowers on the original Home Equity Line of Credit Agreement must sign this form.)

September 08, 2023 _____ /s/ Nick Endrikat _____ (Seal)
Date                              NICK ENDRIKAT                              -Borrower

AABPADVMOD
Asurity.com                                                                                Data ID: WGTMJVB

Loan No: ▓▓▓▓▓▓

# HOME EQUITY LINE OF CREDIT CLOSING COST ADDENDUM FOR LOANS AMOUNTS EXCEEDING $500,000.00

Notwithstanding anything to the contrary contained in the Important Terms of Our Home Equity Line of Credit (the "Disclosure Statement") or in the Home Equity Line of Credit Agreement and Disclosure Statement (the "Agreement") to which this Addendum is attached, the Line of Credit shall have the following terms and changes.

**1. Closing Costs.** Section 7 of the Agreement is amended by the addition of a new subparagraph (G) entitled "**CLOSING COSTS**" which shall read as follows:

"**(G) CLOSING COSTS**. Holder will pay all closing costs for your Loan Amount of up to $500,000.00 at the time of settlement for your benefit; however You will be responsible to pay the additional closing costs for the Loan Amount exceeding $500,000.00. As set forth in Section 17 (Canceling the Loan) of this Agreement, You agree that you will not cancel or terminate the Account within **thirty-six (36)** months after closing. In the event that you do terminate or cancel the Loan prior to that time (such termination or cancellation as described in Section 17 of this Agreement), you agree to reimburse Holder for closing costs which were paid by Holder for your benefit and which are understood and agreed to be **$753.25**. This amount is itemized on the HELOC Fee Statement. Holder's right to assess such amounts is in addition to Holder's right to invoke any remedies permitted by the Agreement or the Security Instrument."

**2. Full Disclosure.** You acknowledge and agree that You have received full disclosure of the terms and conditions relating to this loan, prior to executing any documents or incurring any costs in connection therewith.

**3. Terms.** The terms of this Addendum are hereby incorporated into the Agreement dated **September 8, 2023**.

Witness our hand(s) and seal(s) the day and year written below.

September 08, 2023 _____  /s/ Nick Endrikat _____ (Seal)
Date                                                NICK ENDRIKAT                                      -Borrower

[Sign Original Only]

AABPCOSTAD                                                                                        Rev. February 2023
Asurity.com                                                                                       Data ID: WGTMJVB

M&H File No. CA-25-188184

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2763 Camino Del Rio S., Suite 100
San Diego, CA 92108

A true and correct copy of the foregoing document entitled (*specify*):   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/31/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**TRUSTEE**
Elizabeth (ND) F Rojas (TR)
cacb_ecf_nd@ch13wla.com

**DEBTOR(S) COUNSEL**
Michael B Clayton
ygarcia@wedefend.net

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 12/31/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR(S)**
Nick Anthony Endrikat, 232 Aldebaran Ave, Lompoc, CA 93436

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/31/2025 | Hue Banh | /s/ Hue Banh |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**